THE STATE, LAURA WATSON, PROSECUTRIX, v. LUCRETIA P. IDLER.

1. An assignee of a landlord's reversionary interest can file an affidavit to dispossess a tenant in a summary proceeding taken under the Landlord and Tenant act.

2. If on the return day of a duly served summons in such a proceeding, the tenant does not appear, or appearing does not demand proof of the jurisdictional facts authorizing his dispossession, there is no trial, and no question respecting title to lands can arise.

---

The writ of *certiorari* in this case brings up a judgment by a justice of the peace awarding the possession of a house to a claimant in a summary proceeding taken against a tenant under the Landlord and Tenant act.

The following is a copy of the affidavit filed with the justice:

"Charles A. Idler, being of full age, being duly sworn, on his oath says, that he is for this purpose the duly authorized agent of Lucretia P. Idler; that one Laura Watson is now in the possession of a certain furnished cottage of the said Lucretia P. Idler, situate at No. 127 South Tennessee avenue, Atlantic City, New Jersey, upon an agreement between John Lewis Childs and the said Laura Watson, made the 7th day of May, A. D. 1891, whereby said John Lewis Childs let

and rented the furnished cottage to the said Laura Watson, to hold the same from the 7th day of May, A. D. 1891, to the 15th day of October, A. D. 1891, at the rent or sum of $600, to be paid as .follows : $200 on the signing of said lease, $200 on July 10th, 1891, and $200 on August 10th, 1891 ;. that on or about May 23d, 1891, the said John Lewis Childs conveyed the said premises to said Lucretia P. Idler, together with all his rights under said lease, and the right to recover said rents becoming due thereafter, of which the said Laura Watson had notice in writing, signed by said John Lewis Childs, by his duly authorized agent, on or before July 10th, 1891 ; that the second payment of rent, under lease, amounting to the sum of $200, came due on the 10th day of July, A. D. 1891, and the said Laura Watson made default in the payment thereof ; and that said Lucretia P. Idler demanded the said rent from the said Laura Watson, in writing, signed by said Lucretia P. Idler, by her attorney, which writing is hereto annexed, and hereby made a part hereof, by delivering or causing to be delivered to her personally a copy of said demand, on the 11th day of July, A. D. 1891, requiring the payment of such rent in three days from the day of service of said notice or the possession of said premises. And deponent further says, that said rent, or any part thereof, has not been paid, and that said Laura Watson holds over and continues in possession of the said premises without the permission of the said Lucretia P. Idler, and that satisfaction for such rent cannot be obtained by distress of any goods."

The record shows that, upon filing this affidavit, a summons was duly issued and served, returnable on July 22d, 1891. On that day the justice goes on to say : " Lucretia P. Idler, the claimant, appeared. The said Laura Watson did not appear, and no sufficient cause being shown to the contrary, and it appearing that the aforesaid summons was duly served, I rendered judgment in favor of the said Lucretia P. Idler, that she recover possession of the said premises."

Argued at February•Term, 1892, before Justices DIXON, REED and GARRISON.

For the prosecutrix, *Samuel E. Perry.*

The opinion of the court was delivered by

REED, J. The first reason assigned for the vacation of the judgment of the justice ordering the tenant to be dispossessed, is that the affidavit filed by the agent of the claimant does not show a relation of landlord and tenant existing between the claimant and the tenant, no attornment being shown; and it does not show how the claimant became entitled to the rent accruing from the use of the said premises.

The purpose of this reason is to direct attention to the fact that the claimant is neither the lessor, nor a person to whom the tenant has paid rent, nor one whom the tenant has in any way acknowledged as his landlord.

It is obviously intended in this way to indicate that there is an absence of the conventional relation of landlord and tenant between the parties, and that the existence of such a relation is a jurisdictional fact essential to confer upon the justice authority to entertain the proceeding. The inquiry is thus naturally suggested, What is the attitude of the claimant toward the tenant in the light of this criticism?

In turning to the affidavit, it appears that the claimant is the grantee of all the rights of the lessor in the leased premises and of all the rents growing out of the same.

At common law neither the assignee of the reversion nor the assignee of the rent separate from the reversion, held, by favor of the assignment itself, any relation with the tenant. Whether such a relation should ever arise between the lessee and the assignee of the lessor depended entirely upon the mood of the tenant. On account of reasons springing out of the system of feuds, it was not thought just to a tenant who had entered into the relation with one superior to have his duty to this landlord shifted, without his consent, to a stranger. So, unless he attorned to or professed the new landlord he owed him no duty.

But the reason for the required recognition by the tenant of the assignee having ceased to exist, and the rule itself present-

ing an unnecessary obstacle in the way of transferring property rights, the rule was abolished by an act of parliament known as the statute 4 *Anne, c.* 16, § 19.

This statute was re-enacted in this state, and is now the seventy-fourth section of an act respecting conveyances. *Rev.*, *p.* 166. Since the passage of this act an assignment of the reversionary interest remaining in a lessor, followed by notice to the tenant that such assignment has been made, puts the assignee in the same relation with the tenant as would have arisen by an attornment. This created a privity between the tenant and assignee. This privity, however, was one of estate and not of contract. But incident to this estate was the duty to pay rent. The right to receive rent passed with the estate to the assignee, and he could bring an action of debt against the tenant for the recovery. At common law, however, this gave no right of action upon a covenant to pay rent, or a right to take advantage of a covenant of re-entry, or any other covenant or condition which rested on the contract of letting and was not incident to the estate.

This has been remedied by the statute (32 *Henry VII., c.* 341) substantially re-enacted in this state and standing as seventy-nine of the act respecting conveyances. *Rev., p.* 167. "The effect of this act," says Mr. Platt, "was that the privity of contract, as well as of estate, was transferred by the statute, and that the grantee of the reversion now stands in the same situation and has the same remedies against the lessee, as the heirs at law of individuals or successor in the case of corporations had before the statute." 1 *Platt Leas., p.* 386.

It therefore appears by this recitation of the well-settled legal history of this branch of the law of landlord and tenant, that the claimant in this case was in privity of contract as well as of estate with the landlord of the tenant who was in possession of the described premises.

I think that the right conferred by statute upon a lessor or landlord to take summary proceedings to obtain possession of leased property would pass to the assignee of the lessor unless there was a restriction in the statute itself. Such was the view

taken in construing an act which provided that, upon failure of a tenant to pay rent, it should be lawful for the lessor to give the lessee notice to quit, and upon the failure of the latter person to pay rent or remove to have a summary removal of the tenant. The Supreme Court of Pennsylvania held, by Gibson, C. J., that an assignee of the reversion was entitled to the remedy. *McKeon* v. *King*, 9 *Pa. St.* 213.

But a survey of the statutory provisions under which the present proceeding was taken can leave no doubt that the affidavit filed by the assignee conferred complete jurisdiction upon the justice to issue the summons against the tenant.

The act under the terms of which the present proceedings were instituted was passed in 1847.

. The act first states the instances in which the summary proceedings may be employed. It may be taken—*first,* where a tenant shall hold over after the expiration of his term ; *second,* where he shall hold over after default in the payment of rent.

The act next states who may have the benefit of the act, and how the summary proceeding shall be set on foot.

It provides that any landlord or lessor, his legal representatives, agents or assigns, may make oath of the facts which authorize the removal of the tenant, upon filing which affidavit a summons shall issue.

Now, it is perfectly clear that this affidavit may not only be filed by persons other than the original lessor, but may be filed by such persons in their own right. An agent, it is unnecessary to observe, may file an affidavit for the lessor ; but an assignee or legal representative cannot. The fact that a person is an assignee implies that the right has passed from the lessor and become vested in the assignee. Therefore, the power conferred upon the assignee and the legal representatives to file an affidavit implies that it must not only be done by them but in their own right.

This is so obvious that nothing further need be said. But it may be noted that this section of our act is an exact copy of an older act of New York state (*Rev. Stat. N. Y.; ed.* 1875,

*vol.* 3, *p.* 825), as the preceding sections of our act are slight modifications of the same New York act.

There has been but one decision of the courts of New York, so far as I know, holding that the right to the summary remedy passed to the assignee of the reversion.

Judge Cowen, in *Birdsall* v. *Phillips,* 17 *Wend.* 464, rules the point directly.

The absence of other direct rulings upon this point is accounted for by the fact that the meaning of the words used are so unequivocal that they have never provoked a question.

In cases. involving side questions arising upon the statute, the right of the assignee to stand in the stead of the lessor is treated as a matter of course. *Hill* v. *Stocking,* 6 *Hill* 314; *Gardner* v. *Keteltas,* 3 *Id.* 330; *Miller* v. *Levi,* 44 *N. Y.* 489.

I have no doubt that the affidavit filed conferred upon the justice complete jurisdiction to proceed with the cause.

The prosecutrix, however, attacks the jurisdiction of the justice by appealing to another section of the statute. The section alluded to is section 17. *Rev ,* p. 573.

It is claimed that title to lands came in question in this case, and that by the terms of this section the justice should have dismissed the proceeding. The way that title to land is said to come in question is that the claimant gained his position to bring the proceeding by force of a conveyance of land from the lessor to him. To understand the bearing of this position, it is necessary to look at the language of the act in respect to what shall be done after the affidavit is filed and a summons is issued.

Section 14 provided substantially that on the return day of the summons, or an adjourned day, if no sufficient cause be shown to the contrary, and it shall appear to the said justice or jury that the summons has been duly served, the said justice shall issue his warrant of possession; *provided,* it shall be necessary for said claimant, if required by the defendant, to prove to the satisfaction of the justice or of the jury, if there be a trial by jury, the facts which authorize the removal of a tenant.

The ensuing section provides that if upon the said trial the said plaintiff shall not be able to prove by lease or otherwise, or other evidence of right of possession, his right to the possession of said premises claimed by him without proving title to lands, tenements and hereditaments, that then it shall be the duty of the justice to dismiss the said action.

It is perceived by comparing these two sections that no trial at all takes place unless the defendant requires proof of the facts set out in the affidavit.

If the tenant fails to appear on the return day, or, appearing, fails to require proof of the jurisdictional facts, there is a failure to show cause why he should not be removed, and under the statute there is an admission of the truth of the facts set forth in the affidavit. No question of title can arise in such a case, for there is no trial in which it becomes necessary to prove title.

The above is the aspect presented by the record in this case. The tenant did not appear on the return day of the summons, and, it appearing to the justice that the summons was duly served, he rendered judgment in favor of the claimant. In doing this he was acting within his jurisdiction.

Again, it is objected that the record does not show that there was testimony produced before the justice to show that satisfaction of the rent could not have been obtained by distress. Also that there is an absence of any statement that evidence was produced to show that the statutory three days' notice to the tenant to pay the rent was given, or that Charles A. Idler, who made the affidavit as the agent of Lucretia P. Idler, was in fact such agent.

It is sufficient to say that all these facts are explicitly set out in the affidavit. As it has just been observed concerning the proof of the right of the landlord to possession, that no proof need be provided unless demanded, so of all the other jurisdictional facts set forth in the affidavit, no further proof of their existence becomes necessary unless it is demanded by the tenant.

These remarks dispose of the case as presented by the record. If, however, we should leave the matters stirred by the observations already made without further comment, it might leave the impression that, in our judgment, if proof had been demanded on the return day of the summons, the justice would have been compelled to dismiss the proceedings.

We do not intend to sanction this view. It is too important a question, however, to become the subject matter of an *obiter* opinion.

The writ of *certiorari* is dismissed.