## In re MURRAY REALTY CO.
### No. 28850.

District Court, N. D. New York.
Sept. 30, 1940.

Daniel J. Seubert, of Syracuse, N. Y., for bankrupt.

418

Hiscock, Cowie, Bruce & Lee, of Syracuse, N. Y., for Presbyterian Society in Village of Syracuse.

Costello, Cooney & Fearon, of Syracuse, N. Y., for E. E. Edwards & Son, creditor, and trustees of Daniel M. Edwards' estate.

Francis P. Maloney, of Syracuse, N. Y., for Willis H. Michell, trustee of Murray Realty Co., bankrupt.

MOSCOWITZ, District Judge.

This is a petition for a review of the referee's order.

By an agreement dated April 30, 1917, the First Presbyterian Society in the Village of Syracuse, hereinafter described as the "Lessor", leased to Daniel M. Edwards, now deceased, a building called the Murray Building in Syracuse, New York, for a term of twenty years beginning on May 1, 1921, and ending on April 30, 1941. The agreement provided that Edwards pay all taxes, local assessments, insurance, water rates and repairs in connection with the operation and maintenance of the building during the term of the lease. Upon taking possession of the premises, Edwards expended approximately $100,000 in remodelling the building. On January 3, 1921, Edwards assigned the lease to Murray Realty Company, which was adjudicated a bankrupt in this court on June 10, 1940. Willis H. Michell, upon his election and qualification as trustee in bankruptcy of the Murray Realty Company on June 21, 1940, assumed the lease. To date there has been no default in the payment of rents under the lease. Prior to the bankruptcy of the Murray Realty Company, Edwards died.

The lease provides in part as follows: "It is further agreed that the insolvency or bankruptcy of the second party '(Edwards)' or of any successor, shall at the option of the first party, '(the lessor)' its successors and assigns, terminate this lease and change the second party and all persons holding under him into a tenant or tenants 'holding over' after the expiration of the term without consent."

Subsequent to the appointment of the trustee in bankruptcy of Murray Realty Company, the trustees of the lessor at a formal meeting unanimously passed a resolution terminating the lease under the above-quoted provision and gave notice to the trustee that in view of the fact that a petition in bankruptcy had been filed by Murray Realty Company and a receiver appointed and a trustee elected, the lessor terminated the lease. On June 28, 1940, an order was granted directed to the lessor and to all subtenants occupying the said building to show cause before the referee in bankruptcy why all the subtenants should not pay rent directly to the bankrupt's trustee and why the lessor should not be restrained from interfering with the trustee's collection of rents. The Church appeared specially before the referee and questioned the jurisdiction of the court. It also maintained that it had the right to terminate the lease in accordance with the option contained in the above-quoted paragraph of the lease and that such termination had become effective upon the giving of notice.

Upon the hearing of testimony, the referee determined that the court had jurisdiction to restrain any interference by the lessor in the collection of rents from the subtenants and that the termination option contained in the lease was limited solely to Edward's bankruptcy or that of his estate, but was not operative upon the bankruptcy of any assignee from Edwards.

The testimony showed that the rent due under the lease has been paid to the lessor and that the Estate of Daniel M. Edwards is solvent. The expiration date of the lease is April, 1941, and it cannot be urged that any damage will be suffered by the lessor in the event that the termination of lease under the option is not recognized by the court. In the event that the lease is terminated, the lessor will receive an excess over and above the amount called for under the lease, since the rents collected by the tenant from the subtenants exceeds in a substantial degree the amounts due to the lessor under the main lease.

The sole issue presented in this case is whether the word "successor" contained in the option paragraph includes the assignee of the original tenant. In reaching a conclusion as to the construction of the word "successor", it should be noted that in describing the lessor in whose favor the option exists, the phrase "first party, its successors and assigns" is used. Although the testimony does not show the fact, it may be assumed that the lease was drawn by someone familiar with legal phrases and their connotation, and the failure of the draftsman to refer to "assigns" with respect to the second party and the inclusion of the "assigns" with respect to the first party

would seem to indicate an intentional distinction between the two.

From the testimony adduced before the referee, it appears that Edwards in making the lease originally intended to benefit the Church Society. The proof shows that various members interested in the Church itself counselled him against making the agreement and that he indicated that if he suffered any loss in connection with the lease, since the Church would benefit, the money was being expended in a good cause.

It is apparent that the parties contemplated the assignment of the lease by Edwards for there was included in the lease a provision that the tenant would have the right to sell, assign, hypothecate or in any manner transfer the lease or any part thereof, but such subletting or assigning must be consented to by the lessor and shall not release Edwards. The paragraph granting the right of assignment immediately precedes the paragraph containing the option on the part of the lessor to terminate upon the bankruptcy of the second party. In view of this fact, it must be implied that the omission of the phrase "and his assigns" after the phrase "second party" was intentional.

That the draftsman recognized the distinction between "successors" and "successors and assigns" is further borne out by reference to a further paragraph of the lease providing for the right on the part of the first party to pay any arrears upon the existing mortgage indebtedness. There specific provision is made that the principal sum of such mortgage shall not be deemed to be due and payable to the second party "his heirs and assigns" until all of the rents accruing and to accrue under the lease shall have been applied upon the payment of such mortgage indebtedness, interest, costs and expenses.

■ The word "successor" does not ordinarily connote an assignee. It is normally used with respect to corporate entities and would include another corporation which by a process of amalgamation, consolidation or duly authorized legal succession, has become invested with the rights and has assumed the burdens of the first corporation. Hanna v. Florence Iron Co., 222 N.Y. 290, 299, 300, 118 N.E. 629. It does not contemplate acquisition by ordinary purchase from another corporation. Mississippi Valley Trust Co. v. Southern Trust Co., 8 Cir., 261 F. 765, 767. It has been held in respect to a natural person the word "successor" is an apt and appropriate term to designate one to whom property descends. American Surety Co. v. McDermott, 5 Misc. 298, 25 N.Y.S. 467. In the instant case, therefore, the estate of Edwards would be accurately described as the "successor".

■ The lease also provides: "It is hereby further covenanted and agreed that the stipulations and agreements herein contained are to apply to and bind the heirs, successors, executors, administrators and assigns of the respective parties, * * *."

The lessor contends that this language clearly shows the intention of the parties to have all of the provisions applicable to assigns of the parties. If this contention should be accepted, the word "successors" contained in the option paragraph would be expanded to include "assigns" as well. This paragraph does not assist in the construction of the option paragraph. The effect is simply to bind the assigns of the original tenant to the provisions that in the event of the bankruptcy of the original tenant irrespective of the financial condition of his assignee, the option to terminate the lease becomes operative in favor of the lessor.

■ The proof here shows that the estate of Edwards is solvent so that in the event the bankrupt's trustee fails to make payment of the installments of rents due under the main lease, Edwards' estate would be liable for and capable of making payment of the amount due under the lease. The position of the lessor is not prejudiced in any way except to the extent that it will fail to make a profit for the remainder of the term over and above the amount of rent due under the main lease. It appears from proof that at the time the lease was entered into the lessor looked to Edwards for payment of the lease rental. He was a man of substantial wealth and also a member of the Church Society and nothing which has happened to this date indicates that any loss could possibly be suffered by the lessor if the construction urged by the bankrupt's trustee is accepted by the court. To construe the option paragraph so as to permit the termination of the lease upon the bankruptcy of the assignee would result in a forfeiture which clearly would be inequitable in this case, and is to be avoided. The law frowns upon forfeitures. Forfeitures should never be decreed unless the language of the instrument sought to be con-

420

strued so states in clear, unmistakable terms. In substance the issue here is not one of ambiguity in the language in the lease, but is whether the effort of the lessor to expand, by construction, the usual meaning of the word "successor", for its own benefit is to be approved. It certainly is not the function of the bankruptcy court to expand the definition of a word or phrase so as to result in a forfeiture of certain rights resting in the bankrupt and its creditors in favor of a single creditor, where, particularly as it appears in this case, not alone is that creditor amply protected in its claim, but where the sole result of accepting its construction of the language of the lease would be to benefit it beyond its original intention when the lease was made.

■ Under these circumstances, it appears clear that, the lease constituting an asset of the estate, the court has jurisdiction to restrain interference by the lessor with the collection of rents by the bankrupt's trustee. The order of the referee is therefore affirmed.

Settle order on notice.