## In re CLERC CHEMICAL CORPORATION.
### Appeal of REILLY TAR & CHEMICAL CORPORATION.
### No. 8533.

Circuit Court of Appeals, Third Circuit.

Argued March 7, 1944.

Decided May 1, 1944.

Israel B. Greene, of Newark, N. J. (William K. Flanagan, of Newark, N. J., on the brief), for appellant.

George Furst, of Newark, N. J. (William Harris, of Newark, N. J., on the brief), for Trustee.

Before BIGGS, JONES, and McLAUGHLIN, Circuit Judges.

## McLAUGHLIN, Circuit Judge.

This is a bankruptcy matter involving the construction of a lease. The pertinent paragraphs of the lease are:

"This Lease made this 24th day of November, 1941, between Reilly Tar & Chemical Corporation, an Indiana corporation, duly qualified to transact business in the State of New Jersey, (hereinafter called the Lessor), and *Frederick D. Loeb,* trading as Purax Chemical Products Company (not incorporated) with offices located at 1265 Broadway, New York, N. Y., (*hereinafter called the Lessee*), Witnesseth:" (Emphasis ours)

\* \* \* \* \* \*

"(8) Bankruptcy, etc.: *If the Lessee shall be adjudicated a bankrupt,* file a voluntary petition in bankruptcy, make a general assignment for the benefit of creditors, or if a receiver of its properties and assets shall be appointed, then and in that event the Lessor shall have the option to terminate this lease as of the tenth day after: (a) the appointment of a receiver, or (b) the adjudication of bankruptcy, if no receiver be appointed, or (c) the filing of a voluntary petition in bankruptcy, or (d) the general assignment for the benefit of creditors, as the case may be." (Emphasis ours)

\* \* \* \* \* \*

"(10) Assignment, etc.: The Lessee shall have the right to assign this lease to any corporation, formed by him, *provided, however, that in the event of such assignment the Lessee shall guarantee the rentals due hereunder.* With this exception, the Lessee shall not assign, mortgage, or encumber this lease, nor sublet, nor underlet the premises nor any part thereof without the written consent of the Lessor. In case said premises shall be vacated during the term of this lease, the Lessor may take immediate possession thereof for the remainder of the term and in its discretion may relet the same and apply the proceeds in satisfaction of the rent due under this lease. The Lessee shall remain liable for any unpaid balance of such rent." (Emphasis ours)

\* \* \* \* \* \*

"(19) Successors, etc.: The terms, covenants, conditions and agreements herein contained shall be binding upon parties hereto and their respective successors and assigns."

On December 1, 1942 Loeb assigned the lease to Clerc Chemical Corporation. The assignment, in accordance with its terms, was "*subject nevertheless to* the rents, covenants, conditions and provisions therein [in the lease] also mentioned." An involuntary petition in bankruptcy was filed against Clerc Corporation on July 22, 1943 and thereafter that company was adjudicated a bankrupt. On August 10, 1943, Reilly Tar, the owner and lessor, served Clerc "*as assignee of the lessee mentioned in the lease*" with a notice of the exercising of its option to terminate the lease because of the bankruptcy. The receiver in bankruptcy of Clerc took the position that the bankruptcy of Clerc did not operate as a forfeiture of the lease; therefore, that the lease was part of the bankrupt estate and to be disposed of as such. The matter was heard by the referee who sustained the receiver. The District Court, on review, confirmed the order of the referee. This is an appeal by the owner lessor, Reilly Tar & Chemical Corporation, from the order of the District Court.

Appellant contends that by virtue of Paragraph 19 of the lease, the bankruptcy forfeiture clause in Paragraph 8 is applicable to the bankrupt assignee. The difficulty with this is that Loeb is deliberately designated as the named lessee with Paragraph 8 providing for forfeiture only in the event the lessee shall be adjudicated a bankrupt. There is neither mention of nor allusion to assigns, successors or anyone else. The same centering on Loeb as the lessee persists in Paragraph 10 where he, as lessee, continues to guarantee the rentals even if he should assign the lease to a corporation formed by him. The assignment itself expressly states not that Clerc assumes the lease but takes it *"subject nevertheless to the rents, covenants, conditions and provisions"* mentioned in the lease. Even the notice of the owner to repossess indicates that the latter understood the specific designation of Loeb as lessee when it refers to him as " * * * the lessee mentioned in the lease."

While perhaps the suggestion that the Bankruptcy Court as an Equity Forum discourages forfeitures can be overstressed at times, nevertheless, where the signs point surely to the purpose of the parties and that intent is plainly directed to forfeiture only in the event of the bankruptcy of the named lessee, certainly a strained construction should not be attempted to actually encourage forfeiture in an instance where none was contemplated. In re Murray Realty Co., D.C.N.D.N.Y., 35 F.Supp. 417, 418, is very much like the case at bar. There a lessee, one Edwards, *assigned* his lease to a corporation. The lease provided in part:

"It is further agreed that the insolvency or bankruptcy of the second party '[Edwards]' *or of any successor,* shall at the option of the first party, '[the lessor]' its successors and assigns, terminate this lease and change the second party and all persons holding under him into a tenant or tenants 'holding over' after the expiration of the term without consent."

The court held that the word "successor" in the above quoted lease provision did not include lessee's assignee and, therefore, that the lease was not forfeited and was part of the bankruptcy estate. The court said page 418 of 35 F.Supp.:

"The sole issue presented in this case is whether the word 'successor' contained in the option paragraph includes the assignee of the original tenant. In reaching a conclusion as to the construction of the word 'successor', it should be noted that in describing the lessor in whose favor the option exists, the phrase 'first party, its successors and assigns' is used. Although the testimony does not show the fact, it may be assumed that the lease was drawn by someone familiar with legal phrases and their connotation, and the failure of the draftsman to refer to 'assigns' with respect to the second party and the inclusion of the 'assigns' with respect to the first party would seem to indicate an intentional distinction between the two."

In re Larkey, D.C.N.J., 214 F. 867, which is out of the same district from which this matter comes, was also markedly similar to the present issue. There the lessees (who were alleged bankrupts) with the lessor's consent, had sublet the premises by a separate instrument. The lease contained a provision of re-entry in the event of the lessees' bankruptcy. The court held, squarely that the leasehold was the property of the alleged bankrupt lessees. Under the particular existing circumstances the court further decided that there had been no forfeiture of the lease by the lessees. Its language on page 872 of 214 F., with respect to forfeiture is interesting:

"The only conceivable benefit which a forfeiture would confer upon the landlords is that they might, if relieved of the present tenants, be able to lease their premises at a larger rental. But such a consideration should not commend itself to a court of equity."

The cases cited by the appellant are not in conflict with those above referred to. In re Lindy-Friedman Clothing Co., Inc., 5 Cir., 285 F. 22, 23, which affirmed D.C. Ala., 275 F. 453, had to do with a lease which had been assigned by the lessee to a corporation under which assignment the assignee in addition to agreeing to pay the rent due or to become due under the terms of the assigned lease *"further assumes all other obligations of the original lease to the original lessor."*

In Empress Theatre Co. v. Horton, 8 Cir., 266 F. 657, 659, the lease specifically provided in the last clause of its twelfth paragraph that: "The bankruptcy or insolvency of the party of the second part [lessee], *or other tenant* who may go into possession of the premises, with the written consent of the party of the first part, shall at the option of the party of the first

part, work an immediate forfeit of the lease," etc. The court said regarding it, page 661 of 266 F.:

"It clearly shows that when it was made the lessor and the lessee contemplated the possible, perhaps the probable, insolvency and bankruptcy of the lessee and of some of its successors in interest during the long 15 years then to come, discussed, carefully considered, and finally contracted and wrote into their lease their agreement what the effect of such insolvency and bankruptcy should be, to wit, the end of the term of the lease, its forfeiture, and the return to the lessor of the leased premises at its election."

In Moore v. Risley, 9 Cir., 287 F. 10, 11, three partners were the lessees. The lease contained a clause giving the lessor an option to cancel it if the lessees were adjudged bankrupts. One of the partners withdrew and assigned the lease to the other two by an assignment attached to the lease itself. Following it, and also attached to the lease, the two remaining partners signed under the language: "And in consideration of the foregoing assignment to us, *we hereby agree to be bound by and comply with all of the terms and conditions of said lease.*" Coming after both of the above, and also attached to the lease, appears the following signed by the lessor: "And in consideration of the foregoing promise and agreement, I consent to said assignment."

■ Appellant makes the further point that the bankruptcy clause in the lease runs with the land and suggests that New Jersey law is in accord with this. At the oral argument, counsel referred to Boys et al. v. Robinson et al., Sup.Ct.N.J.1897, 61 N.J. L. 179, 38 A. 813 and State (Roberts, Prosecutrix) v. McPherson, Sup.Ct.N.J. 1898, 62 N.J.L. 165, 40 A. 630 as substantiating this position. The New Jersey statute (R.S. 46:8–2, 3, N.J.S.A.) gives assignees of the reversion the same benefits and remedies as lessors or grantors in respect to covenants and conditions and conversely also gives lessees the same remedies against assignees of the reversion which they had against the lessor or grantor. This was taken over from the English statute of 32 Hen. 8, c. 34, s.1. Two English cases[1] in which that particular statute was involved do lend support to the proposition that a bankruptcy clause in a lease runs with the land. However, the New Jersey decisions construing the New Jersey statute do not bear this out. The holding in the Roberts case is as stated by the court at page 630 of 40 A.:

"By force of this statute the conveyance of leased premises without reservation carries with it the right to terminate the tenancy *if such right was, by the lease, reserved generally by the lessor.*" (Emphasis ours).

The facts there show that there was a written lease for one year which provided that the party of the first part might terminate the tenancy at the end of any month by giving a month's notice in writing to the party of the second part. The owner conveyed the leased premises with the reversion and all of his rights under the said lease to another who died intestate. The sole heir of the deceased gave notice to the tenant in possession of termination of the tenancy with the court holding as above quoted.

In the Boys case, a forfeiture occurred by reason of an express condition of a mining lease that the same should become null and void upon failure of the lessees or their assigns to pay the rent reservation, etc. The court held that under the statute in question the grantees of the reversion had the same right as the grantors to take advantage of such forfeiture. No other New Jersey cases have been suggested or found which, with respect to the statute under discussion, do more than hold that the effect of the Act is simply "* * * that privity of contract as well as estate was transferred by the statute, and that the grantee of the reversion now stands in the same situation, and has the same remedies against the lessee, as the heirs at law of individuals, or successors in the case of corporations, had before the statute." State (Watson, Prosecutrix) v. Idler, N.J. Sup.Ct.1892, 54 N.J.L. 467, 24 A. 554, at page 555.

The New Jersey statute, under its clear construction by the courts of that State, has no application to the facts here, for in the instant case it is the lessor itself, under the express language of the lease, who has no right of re-entry in accordance with the bankruptcy clause unless the bankruptcy be that of the named lessee, Loeb.

---

[1] Smith v. Grownow, [1891] 2 Q.B. 394; Horsey's Estate Ltd. v. Stieger, [1899] 2 Q.B. 79.

676

Our attention has not been called to any decision in this country holding that the bankruptcy clause in a lease does run with the land and the above referred to Murray and Larkey decisions are strongly to the contrary.

The order of the District Court is affirmed.

